```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,                    :
                                             :
              v.                             :   ORDER
                                             :   21-CR-295-1 (WFK)
                                             :
                                             :
WEIWEI HUANG,                                :
                                             :
              Defendant.                     :
------------------------------------------------------------X
```

**WILLIAM F. KUNTZ, II, United States District Judge:**

On June 7, 2022, WeiWei Huang ("Defendant") pled guilty to a lesser included offense of the sole count of the Indictment charging him with Conspiracy to Distribute and Possess with Intent to Distribute Marijuana, in violation of 21 U.S.C. § 841(b)(1)(C). The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to 36 months of incarceration, to be followed by 2 years of supervised release, and a $100.00 mandatory special assessment.

## BACKGROUND

On May 28, 2021, a grand jury returned an Indictment charging WeiWei Huang ("Defendant") with one count of Conspiracy to Distribute and Possess with Intent to Distribute Marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(vii). As alleged in the Indictment, on or about April 28, 2021, Defendant, together with others, conspired to distribute and possess with intent to distribute 1,000 kilograms or more of a substance containing marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 846. On June 7, 2022, Defendant pled guilty to a lesser included offense of the sole count of the Indictment pursuant to a plea agreement.

## DISCUSSION

The Court now sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

1

I.   **Legal Standard**

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

II.   **Analysis**

   A. **The History and Characteristics of the Defendant and the Nature and Circumstances of the Offense**

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

   1.   <u>Nature and Circumstances of the Offense</u>

On April 29, 2021, an individual known to the Government, working for Minerva Transport, a trucking company based in Edmonton, Alberta in Canada, drove a preloaded truck

2

from Stony Creek in Ontario, Canada to the Peace Bridge Port of Entry in Buffalo, New York. Presentence Investigation Report ("PSR"), ECF No. 43, ¶ 3. While at the port of entry, U.S. Customs and Border Protection ("CBP") officers conducted a routine screening using a canine unit trained to detect narcotics, including marijuana. *Id.* The canine displayed a positive signal for the detection of narcotics in the truck. *Id.* A CBP officer asked the individual what he was hauling and where it was going, to which the individual responded he was transporting recycled cardboard destined for Syracuse, New York. *Id.* CBP officers also conducted a Vehicle and Cargo Inspection System ("VACIS") exam, which involves using an x-ray system to image the contents of a truck. *Id.* The VACIS exam revealed the truck contained numerous large satchels that appeared to contain smaller packages of a loose substance inside. *Id.* A subsequent search inside the tractor trailer revealed 25 palletized white plastic satchels. *Id.* A search of one of the satchels revealed a green leafy material which field tested positive for marijuana. *Id.* A total of 1,709.4 kilograms of marijuana was recovered from the vehicle. *Id.*

Homeland Security Investigations ("HSI") agents and law enforcement officials responded to the port of entry. *Id.* ¶ 3. HSI officers directed the individual driving the truck to continue towards their intended destination. *Id.* During the trip, the dispatcher at Minerva Transport changed the drop-off location from Syracuse, New York to Boston, Massachusetts, then to Brooklyn, New York, then to South Plainfield, New Jersey and finally to 110-80 Dunkirk Street in Queens, New York, where the truck was ultimately unloaded. *Id.* Shi Guang Huang and Xin Zhou met the truck on the street and helped maneuver it into the warehouse. *Id.* Defendant and co-conspirators Ting Bin Lin and Wei Lin were inside the warehouse and unloaded the contents of the tractor trailer. *Id.* Defendant and his co-conspirators were arrested without incident. *Id.*

2. Family and Personal Background

Defendant was born on October 7, 1988 in Fuzhou, China to Guang Yan Huang and Mei Hua Chen. *Id.* ¶ 31. Defendant lived in Fujian with his family until the age of 13, at which time he and his family relocated to the United States. *Id.* ¶ 33.

Defendant was raised in a lower-income household and described his childhood as normal but lonely. *Id.* Defendant reports his needs were met, but recalled his parents often argued with each other. *Id.* Defendant's parents ultimately separated in 2019. *Id.* Defendant's father presently resides in Staten Island, New York, and his mother resides in the Bronx, New York. *Id.* Defendant enjoys good relationships with both of his parents. *Id.* However, Defendant reported they have only limited knowledge of the instant offense. *Id.* Defendant has one brother, who presently lives in Staten Island. *Id.* ¶ 32. Defendant's brother is aware of the instant offense and remains supportive of Defendant. *Id.*

Defendant married his wife, Sylvia Lin, in 2017. *Id.* ¶ 34. The couple share a young daughter. *Id.* Defendant's wife is aware of the instant offense and remains supportive of her husband. *Id.*

3. Educational and Employment History

Defendant attended New Town High School in Queens, New York, but reports he withdrew in the tenth grade to work and provide for himself and his family. *Id.* ¶ 42. Defendant is also technically trained in the art of sushi making. *Id.* ¶ 43.

From 2015 until 2017, Defendant was employed as a full-time sushi chef in Manhattan, New York. *Id.* ¶ 47. From 2017 until 2021, Defendant was employed as a full-time sushi chef at another sushi restaurant in Long Island, New York. *Id.* ¶ 46. Defendant's employment with the restaurant ended as a result of the COVID-19 pandemic ("the Pandemic") which "shutter[ed] the

4

restaurant for an extended period of time." *Id.*   During the Pandemic, Defendant earned limited cash income working odd jobs. *Id.* ¶ 48.  Since 2021, Defendant has worked as a full-time front desk representative at an internet café. *Id.* ¶ 45.

4. Prior Convictions

In 2014, Defendant was arrested for driving while intoxicated, for which he attended drinking and driving classes, among other sanctions. *Id.* ¶ 24.

5. Medical and Mental Health

Defendant does not have any chronic or serious health problems. *Id.* ¶¶ 38-39.

6. Substance Abuse

Defendant reported he has never used drugs and only consumes alcohol in social settings. *Id.* ¶¶ 40-41.

**B. The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The instant sentence recognizes the seriousness of the Defendant's offense, justly punishes him for this offense, and seeks to deter others from engaging in similar acts.

**C. The Kinds of Sentences Available**

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

5

Defendant pled guilty to one count of Conspiracy to Distribute and Possess with Intent to Distribute Marijuana in violation of 21 U.S.C. §§ 841(B)(1)(C). For this offense, Defendant faces a maximum term of imprisonment of twenty years and a maximum term of supervised release of life. *See* 21 U.S.C. § 846, 21 U.S.C. § 841(b)(1)(C), and 21 U.S.C. § 841(b)(1)(C).

Defendant is also eligible for a term of not less than one nor more than five years of probation because the instant offense is a Class C Felony. 18 U.S.C. § 3561(c)(1). Pursuant to 18 U.S.C. § 3563(a)(2), if the Court imposes probation, it must also impose a fine, restitution, or community service as a condition of probation unless the Court finds extraordinary circumstances exist that would make such a condition plainly unreasonable.

Defendant also faces a maximum fine of $1,000,000.00 under 21 U.S.C. § 841(b)(1)(C). However, as Probation notes, based on Defendant's financial profile, he appears unable to pay a fine. PSR ¶ 51.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" *Id.* § 3553(a)(4)(A).

The applicable guideline for offenses under 21 U.S.C. § 846 is U.S.S.G. § 2D1.1(a)(5), which provides a base offense level of 30.

A two-level reduction is warranted pursuant to guidelines sections 2D1.1(b)(18) and 5C1.2(a) as Defendant has provided a complete and truthful statement regarding the instant offense and all related conduct to date, as required under the five factors listed in section 5C1.2(a).

An additional four-level reduction is warranted pursuant to U.S.S.G. § 3B1.2(a) as Defendant was a minimal participant in the offense. The offense level is further reduced by two levels pursuant to U.S.S.G. § 3E1.1(a) as Defendant has clearly demonstrated acceptance of responsibility for the offense. Since the Government was notified in a timely manner of Defendant's intention to enter a plea of guilty, the offense level is reduced by an additional one level pursuant to U.S.S.G. § 3E1.1(b). Altogether, this results in a total adjusted offense level of 21.

Defendant's criminal history results in a criminal history category of I. Based upon a total offense level of 21 and a criminal history category of I, the recommended Guidelines range is 37 to 46 months' imprisonment.

Probation recommends a sentence of 24 months of incarceration, followed by two years of supervised release with special conditions. Probation Sentencing Recommendation at 1, ECF No. 43-1. Probation also notes Defendant should receive an additional one-level reduction to his offense level because the Government and defense counsel agreed to this reduction in the plea agreement in the event Defendant pled guilty pursuant to a plea offer made before June 3, 2022. *Id.* Both the Government and defense counsel agree with this recommendation. Factoring in the additional one-level reduction, Defendant's total adjusted offense level is 20, which corresponds to a recommended Guidelines range of 33 to 41 months' imprisonment.

The Government recommends a sentence within the guidelines range while also factoring in the one-level departure recommended by Probation. Government's Sentencing Memorandum ("Gov't Mem.") at 1, ECF No. 59. The Government argues such a sentence would "accurately reflect the seriousness of [] [D]efendant's conduct in conspiring to distribute and possess with intent to distribute immense quantities of marijuana—approximately 1,700 kilograms or almost 4,000 pounds, which had been illegally transported from Canada." *Id.* at 4. The Government

also emphasizes Defendant had the opportunity to remove himself from the conspiracy but failed to take it. *Id.*

Defense counsel disagrees with the Government's position that a period of incarceration is warranted here. Instead, defense counsel seeks a "downward departure" from the Guidelines range and recommends a sentence of probation rather than a prison term. Defendant's Sentencing Memorandum ("Def. Mem.") at 1, ECF No. 58. Defense counsel reports Defendant is a "hard-working devoted father and family man who has the support of his family and friends." *Id.* at 3. Defense counsel argues "[a]ny period of incarceration, no matter how brief, would be devastating for [Defendant] and his young family, who relies on him for financial and emotional support." *Id.* at 4.

Defense counsel also explains Defendant did not intend to become involved in any illegal activity and played only a very small role in the conspiracy. *Id.* According to defense counsel, Defendant answered an advertisement for a job unloading a truck at a warehouse in Queens on the social media platform WeChat, which Defendant had used in the past to find odd jobs after he lost his job as a sushi chef due to the COVID-19 pandemic. *Id.* at 5 (explaining Defendant had previously used WeChat to find a job unloading massage chairs from a tractor trailer). Defense counsel concedes Defendant eventually realized he had been hired to unload marijuana. *Id.* However, defense counsel claims Defendant chose to complete the job "in order [to] earn a few hundred dollars to provide for his family." *Id.*

Finally, Defense counsel reports while Defendant's role in the conspiracy was minimal and Defendant was "totally unaware of the actual structure of the conspiracy, and [] was not involved in any of the planning or management of the operation," Defendant takes responsibility for the role he played and regrets his decision not to remove himself from the situation. *Id.*

8

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5). The parties do not reference any applicable policy statement here. Finding none, the Court continues to the sixth § 3553(a) factor.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense[,]" 18 U.S.C. § 3553(a)(7), which is not applicable here.

### CONCLUSION

The Court finds a sentence of 36 months of incarceration, 2 years of supervised release with special conditions, and a $100.00 mandatory special assessment is consistent with and is sufficient but not greater than necessary to accomplish the purposes of § 3553.

The Court expressly adopts the factual findings of the Presentence Investigation Report, barring any errors contained therein, and to the extent they are not inconsistent with the Court's sentence.

9

SO ORDERED.

s/ WFK

_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: October 2, 2023
       Brooklyn, New York

10